**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. ______________________

**PREFERRED CHOICE PRODUCTS, LLC, a Colorado limited liability company,**

Plaintiff,

v.

**ALL AMERICAN SALES, LLC, a Florida limited liability company, d/b/a ALL AMERICAN COMMERCE;**
**GREEN BULK LLC, a Florida limited liability company; and**
**NEIL SULTAN, an individual,**

Defendants.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff Preferred Choice Products, LLC ("Preferred Choice"), by and through its undersigned counsel, Ragab Law Firm, P.C., for its Complaint against Defendants All American Sales, LLC ("AAS"), Green Bulk LLC ("Green Bulk"), and Neil Sultan ("Sultan") (collectively, "Defendants"), alleges and states as follows:

## I. NATURE OF THE ACTION

1. This is a straightforward action for the price of goods sold, delivered, and accepted, and for the diversion of the business and proceeds generated by those goods. Preferred Choice is a Colorado manufacturer of lawn, garden, turf, pet, and household care products. Between March and May 2026, it manufactured, shipped, and delivered to AAS more than $297,000.00 in product on Net 30 credit terms, for resale by AAS on Amazon.com ("Amazon"). AAS ordered the goods, received them, accepted them, resold them, collected the revenue, and has never paid.

2. AAS has never disputed that it owes the money. On or about July 21, 2026, AAS's principal, Defendant Sultan, confirmed in writing that he had "reviewed the outstanding invoices and the inventory that was removed from AAS warehouse," that "[t]he outstanding invoices totaled $297,995.33," and that "[t]he Credit amount of the returned inventory at cost is $49,838.48." On July 30, 2026, in a telephone call with representatives of Preferred Choice, Sultan again acknowledged the balance and stated that AAS would pay in September or October 2026. Preferred Choice never agreed to any such extension, and no payment has been made.

3. Rather than pay, Sultan moved the Preferred Choice product line to a second Amazon selling account that he owns and/or controls, operated under the name "Green Bulk" and run out of the very same Miami Gardens, Florida warehouse as AAS. On information and belief, Green Bulk continues to list, sell, and ship Preferred Choice product and to collect the associated Amazon proceeds, while Preferred Choice, the company that made the goods and financed the inventory, remains entirely unpaid.

4. Preferred Choice therefore brings this action for breach of contract, the price of accepted goods under C.R.S. § 4-2-709, goods sold and delivered, account stated, unjust enrichment, conversion, civil theft under C.R.S. § 18-4-405, avoidance of voidable transactions under the Colorado Voidable Transactions Act, C.R.S. §§ 38-8-101 to -113, successor liability, alter ego liability, replevin, and an accounting. Preferred Choice seeks judgment jointly and severally against Defendants in an amount of no less than $248,156.85, together with treble damages, prejudgment interest, attorneys' fees, costs, and equitable relief.

## II. PARTIES

5. Plaintiff Preferred Choice Products, LLC is a Colorado limited liability company with its principal place of business at 873 St. Andrews Lane, Louisville, Colorado 80027. Every

member of Preferred Choice is a citizen of the State of Colorado. Preferred Choice manufactures and distributes consumer lawn, garden, turf, pet, and household care products, including products sold under the See Spot Run, Turf Perk, Garden Perk, Flower Perk, Lawn Boost, Soil Boost, Root Boost, Heat Relief, Septic Tank Magic, RV Tank Magic, and Litter Magic Coop Care marks.

6. Defendant All American Sales, LLC, is a Florida limited liability company, d/b/a ALL American Commerce, with its principal place of business and warehouse located at 1674 Northwest 215th Street, Miami Gardens, Florida 33056. On information and belief, every member of AAS is a citizen of the State of Florida. AAS holds itself out publicly as a third-party logistics and e-commerce fulfillment business that acquires consumer goods and resells them through Amazon and other online marketplaces.

7. Defendant Green Bulk LLC is, on information and belief, a Florida limited liability company with its principal place of business located at 1674 Northwest 215th Street, Miami Gardens, Florida 33056, the identical street address, building, and warehouse facility used by AAS. On information and belief, every member of Green Bulk is a citizen of the State of Florida. Green Bulk operates an Amazon selling account under the storefront name "Green Bulk."

8. Defendant Neil Sultan is an individual who, on information and belief, is a citizen of and domiciled in the State of Florida. At all relevant times, Sultan was an owner, principal, officer, manager, and/or controlling person of both AAS and Green Bulk, and personally directed the conduct alleged in this Complaint.

9. Non-party Luis Cruz was at all relevant times an agent and representative of AAS, and was the individual to whom Preferred Choice's invoices were addressed at AAS.

## III. JURISDICTION AND VENUE

10. This Court has original subject matter jurisdiction under 28 U.S.C. § 1332(a)(1). Complete diversity of citizenship exists: Preferred Choice is a citizen of Colorado, and each Defendant is a citizen of Florida. The matter in controversy exceeds $75,000.00, exclusive of interest and costs.

11. This Court has personal jurisdiction over each Defendant pursuant to Fed. R. Civ. P. 4(k)(1)(A) and Colorado's long-arm statute, C.R.S. § 13-1-124(1)(a) (transaction of any business within this state) and § 13-1-124(1)(b) (commission of a tortious act within this state), which extends to the full limits of constitutional due process.

12. AAS purposefully availed itself of the privilege of conducting business in Colorado. AAS reached into Colorado to establish and maintain a continuing commercial supply relationship with a Colorado manufacturer; transmitted purchase orders to Preferred Choice in Colorado, including Purchase Order No. 63775; directed Preferred Choice to manufacture, package, and ship goods from Colorado; received invoices issued from Colorado on Colorado payment terms; remitted payment to Preferred Choice in Colorado, including the $2,446.37 payment credited against Invoice No. 2602; engaged in regular communications with Preferred Choice personnel in Colorado; and undertook payment obligations that were to be performed in Colorado.

13. Sultan and Green Bulk are likewise subject to the jurisdiction of this Court. Sultan personally directed AAS's Colorado-facing conduct, personally participated in the telephone and written communications with Preferred Choice in Colorado described herein, and personally directed the transfer of the Preferred Choice product line and its proceeds away from AAS. Green Bulk is the successor to, mere continuation of, and/or alter ego of AAS, and is subject to

jurisdiction on that basis as well as by virtue of its own knowing participation in the conduct alleged.

14. Defendants' tortious conduct was expressly aimed at Colorado. Defendants knew that Preferred Choice was a Colorado company, knew that the goods and the credit extended originated in Colorado, and knew that the brunt of the harm from nonpayment and from the diversion of the product line and proceeds would be suffered by Preferred Choice in Colorado. That harm was in fact suffered in Colorado.

15. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Preferred Choice's claims occurred in this District, including the formation of the contracts, the manufacture and shipment of the goods, the issuance of the invoices, the extension of credit, the place of required payment, and the resulting injury; and under 28 U.S.C. § 1391(b)(3) to the extent applicable.

16. Colorado substantive law governs Preferred Choice's claims. The contracts at issue were substantially formed and performed in Colorado, the goods were manufactured and shipped from Colorado, payment was due in Colorado, and Colorado has the most significant relationship to the transactions and the parties.

## IV. GENERAL ALLEGATIONS

### A. <u>The Supply Relationship</u>

17. Preferred Choice manufactures its products in Colorado and sells them at wholesale to distributors and online resellers.

18. Beginning prior to March 2026 and continuing through mid-2026, AAS purchased Preferred Choice product for resale on Amazon, including through Amazon's Fulfillment by Amazon ("FBA") program.

19. The parties' relationship followed a consistent course of dealing: AAS placed orders with Preferred Choice identifying the products, SKUs, and quantities it wanted; Preferred Choice manufactured, packaged, and shipped the goods from Colorado, at Preferred Choice's freight expense; Preferred Choice issued a written invoice to AAS identifying each SKU, quantity, unit rate, and extended amount, together with express payment terms of "Net 30"; and AAS was obligated to pay the invoiced balance within thirty days of the invoice date.

20. Each such transaction constituted a contract for the sale of goods governed by Article 2 of the Uniform Commercial Code as adopted in Colorado, C.R.S. §§ 4-2-101 et seq. Both Preferred Choice and AAS are "merchants" within the meaning of C.R.S. § 4-2-104(1).

21. The parties' agreements are evidenced by writings sufficient to satisfy C.R.S. § 4-2-201, including the purchase orders, the written invoices, and the parties' written confirmations. In any event, the statute of frauds is satisfied under C.R.S. § 4-2-201(3)(c) because the goods at issue were received and accepted by AAS.

**B. <u>The Unpaid Invoices</u>**

22. Preferred Choice performed in full. It manufactured, shipped, and delivered every unit of product that AAS ordered under the invoices described below, and AAS received that product.

23. Invoice No. 2602, dated March 16, 2026, with Net 30 terms and a due date of April 15, 2026, invoiced fourteen line items of product, including Septic Tank Magic 60ct, Soil Boost 32oz, RV Tank Magic 30ct, Litter Magic Coop Care, Lawn Boost 32oz, Heat Relief 32oz, Garden Perk 32oz and 16oz, Flower Perk 32oz and 16oz, See Spot Run 64oz, 32oz, and gallons, and Root Boost 32oz — in the total amount of $154,466.70. After application of a $2,446.37 payment, the balance due on Invoice No. 2602 is $152,020.33.

24. Invoice No. 2025-04-TP-FBA-US, dated May 1, 2026, with Net 30 terms and a due date of May 31, 2026, invoiced 400 units of See Spot Run 10/32oz, 33 units of See Spot Run 6/64oz, and 75 units of See Spot Run 4/1 gallon, in the total amount of $105,893.20. No payment has been made on Invoice No. 2025-04-TP-FBA-US.

25. Invoice No. 2609, dated May 11, 2026, with Net 30 terms and a due date of June 10, 2026, and referencing AAS Purchase Order No. 63775, invoiced 17 units of See Spot Run 6/64oz, 150 units of See Spot Run 10/32oz, and 25 units of See Spot Run 4/1 gallon, in the total amount of $40,081.80. No payment has been made on Invoice No. 2609.

26. The unpaid invoices are summarized as follows:

| Invoice No. | Invoice Date | Due Date | Balance Due |
|---|---|---|---|
| 2602 | March 16, 2026 | April 15, 2026 | $152,020.33 |
| 2025-04-TP-FBA-US | May 1, 2026 | May 31, 2026 | $105,893.20 |
| 2609 | May 11, 2026 | June 10, 2026 | $40,081.80 |
| **Total Outstanding** | | | **$297,995.33** |

27. Each of the foregoing invoices is past due. The total invoiced balance outstanding is $297,995.33.

## C. <u>AAS Ordered, Received, and Accepted the Goods</u>

28. AAS took physical delivery of all goods invoiced under Invoice Nos. 2602, 2025-04-TP-FBA-US, and 2609, either at its Miami Gardens, Florida warehouse or at Amazon fulfillment centers designated by AAS.

29. AAS had a reasonable opportunity to inspect the goods and did so. AAS never rejected any of the goods under C.R.S. § 4-2-602, never revoked acceptance under C.R.S. § 4-2-

608, and never notified Preferred Choice of any breach, defect, shortage, or nonconformity within a reasonable time as required by C.R.S. § 4-2-607(3)(a).

30. To the contrary, AAS signified its acceptance of the goods within the meaning of C.R.S. § 4-2-606 by retaining them, by listing and selling them on Amazon, by causing them to be shipped to Amazon fulfillment centers, by collecting the proceeds of their sale, and by acting inconsistently with Preferred Choice's ownership.

31. Under C.R.S. § 4-2-607(1), a buyer that accepts goods "must pay at the contract rate for any goods accepted." AAS accepted the goods and has failed and refused to pay.

**D. The Returned-Inventory Credit and the Refused Accounting**

32. A quantity of Preferred Choice product was subsequently removed from AAS's warehouse and returned to Preferred Choice. The parties reconciled and agreed that the credit for that returned inventory, valued at cost, is $49,838.48.

33. After application of the agreed $49,838.48 returned-inventory credit, the minimum amount due and owing from AAS to Preferred Choice is $248,156.85, subject to upward adjustment following a complete accounting.

34. Preferred Choice has repeatedly requested, and AAS has refused to provide, a complete written accounting of all Amazon sales, payments, holds, chargebacks, fees, returns, inventory removals, disbursements, and remaining inventory relating to Preferred Choice product. That information is uniquely within Defendants' possession, custody, and control, and within the Amazon selling accounts Defendants operate.

35. Because Defendants control the sales and inventory records, Preferred Choice cannot presently determine the full amount owed, the quantity and location of remaining Preferred

Choice inventory, or the total proceeds Defendants have collected from the sale of Preferred Choice product. Preferred Choice reserves the right to amend to conform to the proof.

**E. AAS's Acknowledgment of the Debt**

36. On or about July 21, 2026, Sultan transmitted to Preferred Choice a written statement confirming that he had "reviewed the outstanding invoices and the inventory that was removed from AAS warehouse," that "[t]he outstanding invoices totaled $297995.33," and that "[t]he Credit amount of the returned inventory at cost is $49838.48." In that same writing, Sultan requested Preferred Choice's "help to maintain our Amazon selling relationship and make a seamless move to a new Amazon seller."

37. On July 30, 2026, representatives of Preferred Choice spoke by telephone with Sultan regarding the outstanding balance. During that call, Sultan acknowledged the amounts owed and represented that payment would be made in September or October 2026.

38. Preferred Choice did not agree to defer payment to September or October 2026, and did not waive, modify, or extend the Net 30 terms of the invoices. No payment has been received as of the date of this Complaint.

39. AAS has never disputed the accuracy of the invoices, the quantities delivered, the unit prices charged, the total invoiced balance of $297,995.33, or the returned-inventory credit of $49,838.48. The account between the parties was thereby stated and assented to.

**F. The Purported Amazon Hold Is Not a Defense**

40. Preferred Choice is informed and believes that Amazon may have placed a hold on some or all funds otherwise payable to AAS in connection with AAS's Amazon selling account.

41. There is no written or oral agreement between Preferred Choice and AAS making AAS's payment obligations contingent upon, or deferred until, Amazon's release of any funds to

AAS. AAS purchased the goods on Net 30 credit terms and bore the entire risk of its own downstream collection.

42. Any dispute between AAS and Amazon is a matter solely between AAS and Amazon. It neither excuses nor defers AAS's independent contractual obligation to pay Preferred Choice for goods that AAS ordered, received, and accepted.

## G. The Diversion of the Product Line and Proceeds to Green Bulk

43. Instead of paying Preferred Choice, Sultan moved the sale of Preferred Choice product away from AAS's Amazon selling account and onto a second Amazon selling account operated under the name "Green Bulk."

44. On information and belief, Green Bulk is owned and/or controlled by Sultan, the same principal who owns and/or controls AAS.

45. Green Bulk operates from 1674 Northwest 215th Street, Miami Gardens, Florida 33056, the same address, the same building, and the same warehouse facility as AAS. On information and belief, Green Bulk and AAS share management, personnel, warehouse space, logistics operations, equipment, inventory, and books and records.

46. On information and belief, Green Bulk has continued and continues to list, market, sell, and ship Preferred Choice product through Amazon, and to collect and retain the proceeds of those sales, while the invoices described above remain wholly unpaid.

47. On information and belief, AAS transferred to Green Bulk, and Green Bulk received, some or all of the following assets of AAS without AAS receiving reasonably equivalent value in exchange: Preferred Choice inventory; the Amazon selling relationship for Preferred Choice product; Amazon product listings, ASINs, reviews, and ranking associated with Preferred

Choice product; associated goodwill, sales history, and customer data; and the right to receive the proceeds of sales of Preferred Choice product.

48. On information and belief, those transfers were made to or for the benefit of an insider; were made after Preferred Choice's claim arose; were concealed from Preferred Choice; were made at a time when AAS had been sued or threatened with suit by Preferred Choice; involved substantially all of the value of AAS's Preferred Choice-related business; were made while AAS was insolvent or rendered AAS insolvent; and were made while AAS, through Sultan, retained possession or control of the transferred assets after the transfer.

49. On information and belief, the transfers were undertaken with actual intent to hinder, delay, or defraud Preferred Choice in the collection of its claim, and had the effect of stripping AAS of the very assets and revenue stream from which Preferred Choice would otherwise have been paid.

50. On information and belief, Green Bulk is a mere continuation of AAS's Amazon resale business under a new name, with the same ownership, the same control, the same facility, the same operations, and the same product lines.

51. On information and belief, Sultan has at all relevant times treated AAS and Green Bulk as a single economic unit and as his personal instrumentalities; has disregarded corporate and limited liability company formalities as between them; has commingled or freely moved assets, inventory, funds, personnel, and business opportunities between them; and has used the entity form to shield himself and the enterprise from AAS's obligation to pay Preferred Choice. Adherence to the fiction of separate existence would sanction a fraud and promote injustice.

**H. Demand and Refusal**

52. On August 20, 2026, Preferred Choice, through counsel, transmitted a written demand to AAS and to Sultan demanding payment of no less than $248,156.85; a complete written accounting of all Amazon sales, payments, holds, chargebacks, fees, returns, inventory removals, and remaining inventory relating to Preferred Choice product; documentation reflecting the Amazon payment hold; confirmation of the location and status of remaining Preferred Choice inventory; cooperation in transitioning the Amazon selling relationship and product listings to a new seller; and preservation of all relevant documents, communications, records, and electronically stored information.

53. Defendants did not pay. Defendants did not provide an accounting. Defendants did not produce documentation of the Amazon hold. Defendants did not confirm the location or status of remaining inventory. Defendants did not cooperate in any transition.

54. All conditions precedent to Preferred Choice's claims have been performed, have occurred, or have been waived or excused.

55. As a direct and proximate result of Defendants' conduct, Preferred Choice has been damaged in an amount to be proven at trial, but in no event less than $248,156.85, exclusive of interest, costs, and fees.

## V. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### Breach of Contract
### (Against AAS)

56. Preferred Choice incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

57. Preferred Choice and AAS entered into a series of valid and enforceable contracts for the sale of goods, evidenced by AAS's purchase orders, Preferred Choice's written invoices, and the parties' course of dealing and performance.

58. Under those contracts, Preferred Choice was obligated to manufacture, ship, and deliver conforming goods, and AAS was obligated to pay the invoiced amount within thirty days of the invoice date.

59. Preferred Choice fully performed all of its obligations, or was excused from performance.

60. AAS materially breached the contracts by failing and refusing to pay the invoiced amounts when due and thereafter.

61. As a direct and proximate result of AAS's breaches, Preferred Choice has been damaged in an amount to be proven at trial, but in no event less than $248,156.85, together with prejudgment interest at the statutory rate of eight percent per annum, compounded annually, under C.R.S. § 5-12-102, and costs.

**SECOND CLAIM FOR RELIEF**
**Action for the Price of Accepted Goods — C.R.S. § 4-2-709**
**(Against AAS)**

62. Preferred Choice incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

63. The transactions at issue are transactions in goods governed by Article 2 of the Uniform Commercial Code as adopted in Colorado, C.R.S. §§ 4-2-101 et seq.

64. Preferred Choice is a "seller" and AAS is a "buyer" within the meaning of C.R.S. § 4-2-103(1).

65. AAS accepted the goods identified in Invoice Nos. 2602, 2025-04-TP-FBA-US, and 2609 within the meaning of C.R.S. § 4-2-606, and did not effectively revoke that acceptance.

66. Under C.R.S. § 4-2-709(1)(a), when a buyer fails to pay the price as it becomes due, the seller may recover the price of goods accepted, together with any incidental damages.

67. The price of the accepted goods, net of the agreed $49,838.48 returned-inventory credit, is not less than $248,156.85, which remains wholly unpaid.

68. Preferred Choice is entitled to judgment against AAS for the price of the accepted goods, together with incidental damages, prejudgment interest under C.R.S. § 5-12-102, and costs.

**THIRD CLAIM FOR RELIEF**
**Goods Sold and Delivered / Open Account**
**(Against AAS)**

69. Preferred Choice incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

70. At AAS's special instance and request, Preferred Choice sold and delivered goods to AAS on an open account.

71. The reasonable value of the goods sold and delivered, and the agreed price charged for them, is $297,995.33.

72. AAS accepted the goods and became obligated to pay for them.

73. After crediting all payments and offsets to which AAS is entitled, including the $2,446.37 payment and the $49,838.48 returned-inventory credit, there remains due, owing, and unpaid on the open account not less than $248,156.85, together with prejudgment interest under C.R.S. § 5-12-102.

**FOURTH CLAIM FOR RELIEF**
**Account Stated**
**(Against AAS)**

74. Preferred Choice incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

75. Preferred Choice and AAS had commercial dealings and arrived at a balance due to Preferred Choice.

76. Preferred Choice rendered statements of account to AAS in the form of the invoices identified above and the parties' reconciliation of the returned-inventory credit.

77. AAS received those statements, retained them without objection for an unreasonable period of time, and expressly assented to the balance, including by confirming in writing on or about July 21, 2026 that the outstanding invoices totaled $297,995.33 and that the returned-inventory credit at cost was $49,838.48, and by acknowledging the balance and promising payment during the July 30, 2026 telephone call.

78. AAS thereby became bound to pay the stated balance of not less than $248,156.85, which remains unpaid, together with prejudgment interest under C.R.S. § 5-12-102.

## FIFTH CLAIM FOR RELIEF
### Unjust Enrichment
### (Against All Defendants — Pleaded in the Alternative)

79. Preferred Choice incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

80. This claim is pleaded in the alternative pursuant to Fed. R. Civ. P. 8(d)(2) and (3), to the extent any Defendant contends that no enforceable contract governs the goods, the proceeds, or the transferred business at issue.

81. Preferred Choice conferred a benefit on each Defendant: on AAS, in the form of more than $297,000.00 in product delivered on credit and never paid for; and on Green Bulk and Sultan, in the form of Preferred Choice inventory, the Amazon selling relationship, the product listings and associated goodwill, and the proceeds of the sale of Preferred Choice product.

82. Each Defendant appreciated, knew of, and accepted that benefit.

83. Each Defendant accepted and retained the benefit under circumstances making it inequitable to do so without payment of its value, because each knew that Preferred Choice had not been paid for the very goods generating that benefit.

84. Preferred Choice is entitled to restitution and disgorgement of the value of the benefits conferred, in an amount to be proven at trial, together with prejudgment interest.

**SIXTH CLAIM FOR RELIEF**
**Conversion**
**(Against All Defendants)**

85. Preferred Choice incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

86. This claim is directed to (a) Preferred Choice product remaining in Defendants' possession, custody, or control, or in Amazon fulfillment centers under Defendants' selling accounts, that has not been paid for; and (b) the identifiable proceeds of the sale of Preferred Choice product that Defendants collected and diverted, including proceeds collected through the Green Bulk selling account.

87. Preferred Choice has an ownership interest in and/or an immediate right to possession of that property, including to the extent Preferred Choice retained title, a security interest, or a right of reclamation, and to the extent product was removed from AAS's warehouse for return to Preferred Choice.

88. Defendants knowingly and without authorization exercised dominion and control over that property in a manner hostile to and inconsistent with Preferred Choice's rights, including by continuing to sell Preferred Choice product and to collect and retain the proceeds after refusing to pay for it, and by transferring the product line and its revenue stream to Green Bulk.

89. Preferred Choice demanded return of its property and an accounting for the proceeds, including by the written demand of August 20, 2026, and Defendants refused.

90. Defendants' conduct is independent of, and breaches duties independent of, any contractual undertaking, and was accompanied by circumstances of fraud, malice, or willful and wanton conduct.

91. As a direct and proximate result, Preferred Choice has suffered damages in an amount to be proven at trial, and is entitled to compensatory damages, exemplary damages under C.R.S. § 13-21-102, and prejudgment interest.

**SEVENTH CLAIM FOR RELIEF**
**Civil Theft — C.R.S. § 18-4-405**
**(Against All Defendants)**

92. Preferred Choice incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

93. Preferred Choice is the owner of the property described in the Sixth Claim for Relief, namely unpaid-for Preferred Choice product and the identifiable proceeds of the sale of Preferred Choice product.

94. Defendants knowingly obtained, retained, and/or exercised control over that property without authorization, and/or by threat or deception, with the specific intent to permanently deprive Preferred Choice of the use and benefit of it, in violation of C.R.S. § 18-4-401.

95. Defendants' intent to permanently deprive is evidenced by, among other things, their continued sale of Preferred Choice product after default, their retention of the proceeds, their refusal to account, their diversion of the product line and revenue stream to a commonly owned entity operating from the same facility, and their failure to pay any portion of the balance despite Sultan's written and oral acknowledgments that it was owed.

96. The property has not been returned and the proceeds have not been remitted.

97. Under C.R.S. § 18-4-405, Preferred Choice is entitled to recover the property or the value thereof, together with treble the amount of its actual damages, plus costs and reasonable attorneys' fees. See Itin v. Ungar, 17 P.3d 129 (Colo. 2000). The judicially created economic loss rule does not bar this statutory claim. See Bermel v. BlueRadios, Inc., 2019 CO 31, 440 P.3d 1150.

**EIGHTH CLAIM FOR RELIEF**
**Voidable Transaction — Actual Intent**
**C.R.S. § 38-8-105(1)(a)**
**(Against All Defendants)**

98. Preferred Choice incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

99. Preferred Choice is a "creditor" with a "claim" against AAS, a "debtor," within the meaning of C.R.S. § 38-8-102. Preferred Choice's claim arose no later than April 15, 2026.

100. AAS made transfers of assets to Green Bulk and/or to or for the benefit of Sultan, as described above, including transfers of inventory, the Amazon selling relationship, product listings and associated goodwill, and the right to receive sale proceeds.

101. Those transfers were made with actual intent to hinder, delay, or defraud Preferred Choice, in violation of C.R.S. § 38-8-105(1)(a).

102. The badges of fraud enumerated in C.R.S. § 38-8-105(2) are present, including that the transfers were to an insider; that the debtor retained possession or control of the property after the transfer; that the transfers were concealed; that before the transfers were made the debtor had been sued or threatened with suit; that the transfers were of substantially all of the debtor's relevant assets; that the value of consideration received was not reasonably equivalent to the value of the assets transferred; and that the debtor was insolvent or became insolvent shortly after the transfers were made.

103. Preferred Choice is entitled to the relief available under C.R.S. § 38-8-107 and § 38-8-108, including avoidance of the transfers to the extent necessary to satisfy its claim, attachment or other provisional remedy against the assets transferred, an injunction against further disposition, the appointment of a receiver, judgment against Green Bulk and Sultan as transferees for the value of the assets transferred, and the additional recovery authorized by C.R.S. § 38-8-108(1)(c).

**NINTH CLAIM FOR RELIEF**
**Voidable Transaction — Constructive**
**C.R.S. §§ 38-8-105(1)(b) and 38-8-106**
**(Against All Defendants)**

104. Preferred Choice incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

105. AAS made the transfers described above without receiving a reasonably equivalent value in exchange.

106. At the time of the transfers, AAS was engaged or was about to engage in a business or transaction for which its remaining assets were unreasonably small in relation to the business or transaction, and/or intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due, in violation of C.R.S. § 38-8-105(1)(b).

107. Alternatively, AAS was insolvent at the time of the transfers or became insolvent as a result of them, and Preferred Choice's claim arose before the transfers were made, in violation of C.R.S. § 38-8-106(1).

108. Alternatively, the transfers were made to an insider for an antecedent debt while AAS was insolvent and the insider had reasonable cause to believe AAS was insolvent, in violation of C.R.S. § 38-8-106(2).

109. Preferred Choice is entitled to the full range of relief available under C.R.S. §§ 38-8-107 and 38-8-108.

**TENTH CLAIM FOR RELIEF**
**Successor Liability / Mere Continuation**
**(Against Green Bulk)**

110. Preferred Choice incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

111. Green Bulk acquired the assets, operations, and business of AAS's Preferred Choice product line, including its inventory, Amazon selling relationship, listings, goodwill, and revenue stream.

112. Green Bulk is liable for AAS's obligations to Preferred Choice because, among other reasons: Green Bulk expressly or impliedly agreed to assume those obligations; the transaction amounted to a de facto merger or consolidation of AAS's relevant business into Green Bulk; Green Bulk is a mere continuation of AAS, sharing common ownership, common control, the same principal, the same address and facility, the same personnel, and the same operations; and/or the transaction was entered into fraudulently for the purpose of escaping AAS's liability to Preferred Choice.

113. Green Bulk is therefore jointly and severally liable for the full amount of AAS's obligations to Preferred Choice.

**ELEVENTH CLAIM FOR RELIEF**
**Alter Ego / Piercing the Veil**
**(Against Sultan and Green Bulk)**

114. Preferred Choice incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

115. At all relevant times, AAS and Green Bulk were the alter egos and mere instrumentalities of Sultan and of one another.

116. Sultan exercised complete domination and control over AAS and Green Bulk with respect to the transactions at issue, including the decision to accept Preferred Choice's goods on credit, the decision not to pay for them, and the decision to move the product line and its proceeds to Green Bulk.

117. On information and belief, the corporate forms were used to perpetrate a wrong against Preferred Choice, including by inducing continued shipments on credit and then stripping the obligor entity of the assets and revenue from which the debt would be paid, and by operating a single enterprise through nominally separate entities at a single facility under unified control.

118. On information and belief, AAS and Green Bulk failed to observe entity formalities, commingled or freely transferred funds, inventory, personnel, and business opportunities, were inadequately capitalized in relation to the obligations incurred, and were operated as a single economic unit.

119. An equitable result requires disregarding the separate existence of AAS and Green Bulk and holding Sultan and Green Bulk jointly and severally liable for AAS's obligations to Preferred Choice.

**TWELFTH CLAIM FOR RELIEF**
**Replevin / Claim and Delivery**
**(Against All Defendants)**

120. Preferred Choice incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

121. Preferred Choice is entitled to immediate possession of all remaining Preferred Choice product in Defendants' possession, custody, or control, or held in Amazon fulfillment centers under Defendants' selling accounts, for which Preferred Choice has not been paid.

122. Defendants wrongfully detain that property, which has not been taken for any tax, assessment, or fine, and has not been seized under any execution or attachment against Preferred Choice's property.

123. Preferred Choice is entitled to an order of possession and delivery of the property, or in the alternative its value, together with damages for its wrongful detention, pursuant to Fed. R. Civ. P. 64 and C.R.C.P. 104.

**THIRTEENTH CLAIM FOR RELIEF**
**Accounting and Constructive Trust**
**(Against All Defendants)**

124. Preferred Choice incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

125. Defendants exclusively possess the records necessary to determine the quantity of Preferred Choice product sold, the gross and net proceeds collected, the fees, returns, chargebacks, and holds applied, the disposition of removed inventory, and the location and quantity of remaining Preferred Choice product.

126. The accounts between the parties are complex, span multiple invoices, two selling entities, and Amazon's fulfillment and payment systems, and cannot be determined without discovery of and an accounting from Defendants.

127. Preferred Choice has no adequate remedy at law absent a full and complete accounting.

128. Because Defendants hold proceeds traceable to Preferred Choice's goods that in equity and good conscience belong to Preferred Choice, Preferred Choice is entitled to the imposition of a constructive trust and an equitable lien over those proceeds and over any remaining Preferred Choice inventory, and to an order requiring Defendants to render a complete accounting.

**FOURTEENTH CLAIM FOR RELIEF**
**Injunctive Relief**
**(Against All Defendants)**

129. Preferred Choice incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

130. Preferred Choice seeks preliminary and permanent injunctive relief restraining Defendants from further transferring, dissipating, encumbering, or concealing Preferred Choice inventory, the proceeds of sales of Preferred Choice product, and the assets transferred from AAS to Green Bulk, and requiring Defendants to preserve all records relating thereto.

131. Preferred Choice has a substantial likelihood of success on the merits; will suffer real, immediate, and irreparable injury if the assets and proceeds are further dissipated among commonly controlled entities; has no plain, speedy, and adequate remedy at law; the threatened injury outweighs any damage the injunction may cause Defendants; and the injunction would not be adverse to the public interest.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Preferred Choice Products, LLC respectfully requests that this Court enter judgment in its favor and against Defendants All American Commerce, LLC, Green Bulk LLC, and Neil Sultan, jointly and severally, and grant the following relief:

A. Compensatory damages in an amount to be proven at trial, but in no event less than $248,156.85, plus such additional amounts as are established following a complete accounting;

B. Judgment for the price of accepted goods pursuant to C.R.S. § 4-2-709, together with incidental damages;

C. Treble damages, costs, and reasonable attorneys' fees pursuant to C.R.S. § 18-4-405;

D. Exemplary damages pursuant to C.R.S. § 13-21-102;

E. Avoidance of the transfers from AAS to Green Bulk and/or Sultan to the extent necessary to satisfy Preferred Choice's claim, judgment against the transferees for the value of the assets transferred, attachment and other provisional remedies, appointment of a receiver, and the additional recovery authorized under C.R.S. §§ 38-8-107 and 38-8-108, including C.R.S. § 38-8-108(1)(c);

F. An order declaring Green Bulk to be the successor to and mere continuation of AAS, and declaring AAS and Green Bulk to be the alter egos of Sultan, such that each is jointly and severally liable for the obligations owed to Preferred Choice;

G. An order of possession and delivery of all remaining Preferred Choice product in Defendants' possession, custody, or control, or in the alternative the value thereof, together with damages for its wrongful detention;

H. An order compelling a full, complete, and verified accounting of all Amazon sales, proceeds, payments, holds, chargebacks, fees, returns, inventory removals, disbursements, and remaining inventory relating to Preferred Choice product;

I. Imposition of a constructive trust and equitable lien upon all proceeds traceable to the sale of Preferred Choice product and upon all remaining Preferred Choice inventory;

J. Preliminary and permanent injunctive relief as described above;

K. Prejudgment interest at the rate of eight percent per annum, compounded annually, from the date each amount became due, pursuant to C.R.S. § 5-12-102, or alternatively an amount that fully recognizes the gain or benefit realized by Defendants;

L. Post-judgment interest as allowed by 28 U.S.C. § 1961;

M. Costs of suit and reasonable attorneys' fees as permitted by statute, contract, or law; and

N. Such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiff Preferred Choice Products, LLC demands a trial by jury on all issues so triable pursuant to Fed. R. Civ. P. 38(b) and D.C.COLO.LCivR 38.1.

Respectfully submitted this 9th day of October 2026.

RAGAB LAW FIRM, P.C.

*/s/ Joseph P. Sanchez*
Joseph P. Sanchez, #20975
700 Seventeenth St., Suite 900
Denver, CO 80202
Telephone: (720) 712-0201
Email: joseph@ragablawfirm.com
*Counsel for Plaintiff Preferred Choice Products, LLC*

**Plaintiff's Address:**
Preferred Choice Products, LLC
873 St. Andrews Lane
Louisville, Colorado 80027